UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN AUTOMOBILE IN-
SURANCE PLACEMENT FACIL-
ITY,

        Plaintiff,

v.

NEW GRACE REHABILITATION
CENTER, PLLC, PRODIGY SPI-
NAL REHABILITATION CEN-
TER, PLLC, VAN DYKE REHA-
BILITATION CENTER, PLLC,
SUMMER ROSE FAKHOURI,
D.C, MICHAEL STEVEN
MEERON, D.C., and ANTHONY
EUGENE PULICE, D.C.,

        Defendants.

Case No. 17-11007
Hon. Terrence G. Berg

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
FOR LEAVE TO AMEND (DKT. 19) AND DENYING, AS
MOOT, DEFENDANT'S MOTION TO DISMISS (DKT. 15)**

## I. Introduction

Before the Court are Defendants' motion to dismiss the amended complaint (Dkt. 15), Plaintiff's response and motion to amend the complaint for a second time (Dkts. 18 and 19), and Defendants' opposition (Dkt. 23) to Plaintiff's motion to amend. Because Plaintiff sets out sufficient grounds for amending the complaint, the Second Amended Complaint may be filed, rendering moot Defendants' motion to dismiss.

The Second Amended Complaint alleges that Defendants, chiropractors and chiropractic clinics, orchestrated a scheme to submit false or fraudulent insurance claims for treatment of individuals injured in automobile accidents, which were ultimately reimbursed by Plaintiff, the Michigan Automobile Insurance Placement Facility (MAIPF or Plaintiff). MAIPF is the automobile insurer of last resort in Michigan. In other words, Plaintiff provides automobile insurance to citizens who are unable to obtain insurance on their own. Examples would include pedestrians hurt in accidents or passengers injured in auto crashes who do not have automobile insurance. Defendants include three chiropractic clinics, and three individual chiropractors.

Having reviewed the motions, and the entire record, the Court finds that these documents adequately present the issues now before the Court, and that oral argument would not aid the decision. Accordingly, the Court will decide the motion without a hearing. *See* E.D. Mich. LR 7.1(f)(2). For the reasons set forth below, Plaintiff's motion for leave to amend (Dkt. 19) will be **GRANTED**, and Defendants' motion to dismiss (Dkt. 15) will be **DENIED AS MOOT**.

## II. Background

Under Michigan's "no-fault" automobile insurance statute, insurers are required to pay personal protection insurance benefits without regard to fault when an individual suffers bodily injury as a result of an automobile accident. *See* Mich. Comp. Laws § 500.3105. Plaintiff is a statutorily created organization, responsible for ensuring that automobile insurance coverage is available to any person who is unable to procure insurance on their own. *See* Mich. Comp. Laws § 500.3301. Plaintiff was also tasked by the Michigan Legislature with adopting and implementing an "Assigned Claims Plan." *See* Mich. Comp. Laws §§ 500.3171-3178.

Under the Assigned Claims Plan, if a person is injured in an automobile accident – but has no automobile insurance of his or her own, as might be the case with a passenger or a pedestrian – that person's claim for insurance benefits is assigned to an insurer (the

"Servicing Insurer") by Plaintiff. *Id.* § 500.3172. The insurer to whom a claim is assigned is then obligated to make "prompt payment" on the claim, and it will subsequently be reimbursed by Plaintiff for the payments, the insurer's related costs, and interest. *Id.* § 500.3175(1). This Assigned Claims Plan thus facilitates the payment of claims to uninsured individuals by essentially outsourcing the processing and adjustment of such claims to private insurance companies.

Plaintiff originally filed this litigation in March 2017, bringing five causes of action against Defendants: fraud, unjust enrichment, payment under mistake of fact, Civil RICO, and declaratory judgment. Plaintiff alleges a scheme by Defendants to fraudulently obtain hundreds of thousands of dollars in insurance benefits from Servicing Insurers that were assigned claims under the Assigned Claims Plan. Plaintiff alleges that, pursuant to statute, it has since reimbursed those Servicing Insurers for the claims they paid to Defendants; Plaintiff is now seeking to recoup those paid benefits from Defendants. The essence of the Complaint is Plaintiff's allegation that Defendants are part of a racketeering enterprise that has the alleged purpose of fraudulently generating bills for unneeded medical services for individuals who were in automobile accidents, and whose claims were adjusted under the Assigned Claims Plan.

In its original Complaint – and in the subsequently Amended Complaint that removed some mistakenly included insurance claims from this matter – Plaintiff described the overall scope of the Defendants' alleged scheme. In particular, Plaintiff alleges that Defendants scheme "involved obtaining clientele who had been allegedly involved in motor vehicle accidents and then devising a series of treatments based on diagnoses that were medically improbable" (Dkt. 19, Proposed Second Amended Compl. ¶ 22, Pg ID 571). Plaintiff claims that Defendants "would begin by having [a] new patient undergo a series of x-rays," which were unnecessary for the chiropractic treatment that Defendants could provide, and then use those unnecessary x-rays as "objective" data to justify a lengthy course of treatment. *Id* ¶¶ 23, 24, Pg ID 572. "In nearly every instance…Defendants find an injury to *every* level of a patient's spine." *Id*. (emphasis in original).

Plaintiff alleges that Defendants' "treatment could go on for months without any actual improvement…" and that "Defendants routinely either create the impression of a far greater and more severe injury or find an injury where none existed in order to justify their initial treatment, their continued treatment, or their subsequent referrals." *Id.* ¶ 24, Pg IDs 572. Defendants would also "refer [patients] to a network of other treating providers who were likewise engaged in the practice of finding questionable injuries related

5

to motor vehicle accidents and who would support the need for continuing treatment for the purposes of fraudulently obtaining no-fault benefits from various insurers," and refer patients for MRIs which were routinely "over-read" to find injuries where none in fact existed. *Id.* ¶ 26, Pg ID 573. Plaintiff also claims that Defendants "billed for services that must be performed by persons licensed in those fields without having anyone with the requisite licensure to perform the service." *Id.* ¶ 27, Pg ID 574. Defendants' overarching "goal in this scheme was to keep their patients in essentially a closed treatment loop with like-minded practitioners all engaged in attributing non-existent or questionable injuries to alleged motor vehicle accidents in order to continue to perform—and, more importantly, bill for—unnecessary and unwarranted treatment." *Id.* ¶ 29, Pg ID 574.

Plaintiff's proposed Second Amended Complaint adds more particularized allegations concerning six individual patients and their claims that Plaintiff cites as illustrative of Defendants' overall scheme. *Id.* ¶¶ 32-55, Pg IDs 576-584. The six exemplar patients are identified by their initials, the date they were injured in an accident, the Servicing Insurer, and the associated claim number. Furthermore, Plaintiff attached a chart to its proposed Second Amended Complaint, listing over one hundred patients (identified

6

by their initials, claim number, and date of accident), and segregated by Servicing Insurers Allstate, Citizens, Farm Bureau, Farmers, and Titan. *See* Pg IDs 789-793.

Common to Defendants' motion to dismiss, and their opposition to Plaintiff's motion to amend, is the contention that Plaintiff's allegations fail to state a claim and, more specifically, that the alleged fraudulent acts are insufficiently plead. Of course, assertions of fact contained in the Complaint are mere allegations at this point. Nevertheless, at this stage, the Court must presume that all of Plaintiff's allegations against Defendants are true, and must view them in a light most favorable to Plaintiff.

### III. Standard of Review

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court may freely grant leave to amend a pleading when justice so requires, in order to ensure that a case is tried on its merits "rather than [on] the technicalities of the pleadings." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986). "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). Whether an amendment is futile is assessed by the standards set forth above for motions to dismiss.

### IV. Analysis

Under the liberal pleading standard of Federal Rule of Civil Procedure 8, a pleader is required to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also* Fed. R. Civ. P. 8(d)(1) ("Each allegation must be simple, concise, and direct"). When a complaint alleges fraud, however, the plaintiff must meet the heightened pleading standard for fraud under Rule 9(b). *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Pleading fraud with particularity

under Rule 9(b) requires a plaintiff to allege: (i) the time, place, and content of the alleged misrepresentation; (ii) the fraudulent scheme; (iii) the defendant's fraudulent intent; and (iv) the resulting injury. *See Chesbrough*, 655 F.3d at 467.

Cases brought under the False Claims Act may serve as useful analogs to apply the particularity requirement for pleading fraud claims to the present case. In assessing the validity of a False Claims Act complaint, the Sixth Circuit has held that when the allegations in a complaint regarding a fraudulent scheme are "complex," "far-reaching," and "encompass many allegedly false claims over a substantial period of time," pleading every specific instance of fraud "would be extremely ungainly, if not impossible." *United States ex rel. Bledsoe v. Cmty. Health Systems, Inc.*, 501 F.3d 493, 509 (6th Cir. 2007). Under those circumstances, the plaintiff may allege a more generalized false or fraudulent scheme perpetrated by the defendant. *Id.* at 510. However, the court should not construe this scheme too broadly, as doing so would violate the heightened pleading standard underlying Rule 9(b). *Id.* Nor should the scheme be construed too narrowly, as doing so would undermine the principle that it could be impractical for a plaintiff to plead each and every instance of fraudulent conduct. *Id.* To strike a proper

balance between these two competing interests, a court should construe a fraudulent scheme "as narrowly as is necessary to protect the policies promoted by Rule 9(b)." *Id.*

Pleading a fraudulent scheme with particularity alone is insufficient to proceed to discovery. *Id.* at 504 (rejecting plaintiff's contention that a complaint is adequate if it "pleads a false scheme with particularity"). Rather, the plaintiff must plead a specific example of a false claim with particularity that was "submitted to the government pursuant to that scheme." *Id.* at 510; *see also United States ex rel. Hirt v. Walgreen Co.*, 846 F.3d 879, 881 (6th Cir. 2017) ("The identification of at least one false claim with specificity is 'an indispensable element of a complaint that alleges a [False Claims Act] violation in compliance with Rule 9(b).'" (quoting *Bledsoe*, 501 F.3d at 504)). These examples will support more generalized allegations of fraud if they are representative "of the broader class of claims." *Bledsoe*, 501 F.3d at 510.

In other words, the examples of specific false claims must be "characteristic examples that are illustrative of the class of all claims covered by the fraudulent scheme." *Id.* at 511. This means that the examples must be pled with specificity "in all material respects, including general time frame, substantive content, and relation to the allegedly fraudulent scheme," such that "a materially

10

similar set of claims could have been produced with a reasonable probability by a random draw from the total pool of all claims." *Id.*

Plaintiff's proposed Second Amended Complaint adequately alleges how Defendants' purported scheme operates. Furthermore, Plaintiff's Complaint identified six specific patients who, Plaintiff claims, received unwarranted medical treatments. At this stage of the case, these allegations are sufficient to put Defendants on notice of the allegations against them. "The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation allowing the defendants to answer, addressing in an informed way plaintiff's claim of fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (quotation marks omitted). "So long as [the plaintiff] pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008). Plaintiff has provided a thirty-page description of how Defendants' alleged fraud generally worked, included several sample cases containing specific allegations as to how the fraud operated in those claims, and supplemented the Complaint with an attached chart detailing over one-hundred addi-

tional specifically identified claims that Plaintiff says involved patients who received unwarranted or otherwise non-compensable treatment. By identifying specific claims that Plaintiff alleges were submitted as a part of this purportedly fraudulent enterprise, Plaintiff has placed Defendants on notice of the misrepresentations it is alleged to have made. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, No. 14-CV-10266, 2014 WL 5427170, at *2 (E.D. Mich. Oct. 24, 2014).

In a complex case, involving multiple actors and spanning a significant period of time, where there has been no opportunity for discovery, "the specificity requirements of Rule 9(b) [should] be applied less stringently." *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 788 (E.D. Mich. 2015), quoting *JAC Holding Enterprises, Inc. v. Atrium Capital Partners, LLC*, 997 F.Supp.2d 710, 727 (E.D. Mich. 2014). "'It is a principle of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery. Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim.'" *JAC Holding* (quoting *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012)).

Defendants also argue that Plaintiff has failed to plead a plausible pattern of racketeering activity sufficient to maintain a RICO claim because it has not pled acts of mail fraud with the particularity required by Rule 9(b). The Court also rejects this argument. As Judge O'Meara observed in *Physiomatrix*, analyzing similar allegations of mail fraud with a substantially similar quantum of particularity as Plaintiff has offered here:

> In the context of a RICO action, State Farm has alleged fraud with sufficient particularity. "In complex civil RICO actions involving multiple defendants, Rule 9(b) does not [ ] require that the 'temporal or geographic particulars of each mailing made in furtherance of the fraudulent scheme be stated with particularity, but only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme.'

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-11500, 2013 WL 509284, at *5 (E.D. Mich. Feb. 12, 2013), on reconsideration, No. 12-11500, 2013 WL 3777108 (E.D. Mich. May 22, 2013) (quoting *Aiu Ins. Co. v. Olmecs Medical Supply, Inc.*, No. 04–2934, 2005 WL 3710370 (E.D.N.Y. Feb. 22 2005)) (omitting internal citation) (alteration added).

As in *Physiomatrix*, Plaintiff here provided a listing of over one hundred claim files (Pg IDs 789-793) which Defendants are alleged

13

to have billed for unnecessary medical services. Each of these actions ultimately contributes to the fraudulent submission to Plaintiff, in which each member has contributed in whole or in part to one of the hundreds of false representations specifically referenced in the Complaint. Accordingly, Plaintiff has adequately pled that all defendants either executed or caused the execution of the mail fraud scheme at issue here.

Finally, Defendants also challenge Plaintiff's standing to bring this lawsuit, because Plaintiff does not allege that it made any payments directly to Defendants. However, as Plaintiff explained in its Second Amended Complaint, it is bound by statute to reimburse any Servicing Insurers for payments made on any assigned claims. *See* Mich. Comp. Laws § 500.3175(1). This reimbursement not only includes the specific benefits that those Servicing Insurers paid, but also includes loss adjustments costs and an appropriate interest rate accounting for the time value of money. *See id*. It is significant that Subsection (2) dictates that any Servicing Insurers must preserve and enforce any rights of indemnity or reimbursement against third parties like Defendants, and, more importantly, that they "shall assign the rights to the [MAIPF] on reimbursement by the [MAIPF]." Mich. Comp. Laws § 500.3175(2). Plaintiff alleges

14

that all of these claims, to the extent payment has been made by the respective Servicing Insurer, have been fully reimbursed by Plaintiff. In other words, even assuming that Plaintiff "needs an assignment," it already has one by operation of statute.

The Court also notes that one court in this district has held that where Servicing Insurers have been reimbursed by the MAIPF, they do not have standing to bring a fraud claim against a medical provider. *See Allstate Ins. Co. v. Glob. Med. Billing, Inc.,* No. 09-14975, 2011 WL 721299, at \*2-4 (E.D. Mich. Feb. 23, 2011)*, aff'd,* 520 Fed. App'x 409 (6th Cir. 2013). If this Court were to adopt Defendants' position on standing – and hold that the MAIPF likewise lacks standing to bring fraud claims against medical providers – the result would be to insulate fraudulent claimants from liability: no party could bring a civil lawsuit against a medical provider for submitting fraudulent claims through the Assigned Claims Plan. This outcome contravenes common sense and principles of basic fairness. Defendants' challenge to Plaintiff's standing to bring this suit is not well-taken; Plaintiff's Complaint must be answered, and this case should proceed into discovery.

## V. Conclusion

For the foregoing reasons, Plaintiff's motion for leave to amend is **GRANTED**, and Defendants' motion to dismiss is **DENIED AS MOOT**. Plaintiff is directed to file the proposed Second Amended

Complaint within seven (7) days of the date of this order. Upon filing of the Second Amended Complaint, Defendants shall have fourteen (14) days to file an Answer. The parties must then file their Rule 26(f) discovery plan within seven (7) after the filing of Defendants' Answer. The Court will then conduct a scheduling conference, and this case will proceed into discovery.

**SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: February 13, 2018

**Certificate of Service**

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on February 13, 2018.

s/A. Chubb
Case Manager